Case 1:14-cv-00016   Document 37   Filed 04/21/16   Page 1 of 8

FILED
Clerk
District Court
APR 21 2016
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LORNA S. BARO,<br><br>      Plaintiff,<br><br>  v.<br><br>GEORGE REDOBLE,<br><br>      Defendant. | Case 1:14-CV-00016<br><br>**DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This is a minimum wage and overtime case about a Saipan fishmonger. Plaintiff Lorna Baro alleges that her former employer, Defendant George Redoble d/b/a Marianas Fishing, failed to pay her for hours worked in accordance with the federal Fair Labor Standards Act ("FLSA"), the CNMI Minimum Wage and Hour Act ("MWHA"), and an employment contract. (First Amend. Compl. ("FAC"), ECF No. 16.) She also complains that Redoble has been unjustly enriched by his failure to pay her. (*Id.*) Redoble denies the allegations. (Answer, ECF No. 19.)

In the motion for summary judgment currently pending before the Court, Redoble argues that the FLSA does not apply to this case. Marianas Fishing is not an "enterprise engaged in commerce" because it grosses too little in fish sales, and Baro herself was not "engaged in commerce" because she merely sold fish in the local, intrastate Saipan market. (Mot. Summ. J. 4–9, ECF No. 26.) Redoble contends that because the FLSA does not apply, the Court should deny supplemental jurisdiction over Baro's remaining claims and dismiss her lawsuit. (*Id.* at 1, 9.) Baro tacitly accepts that Marinas Fishing is not an enterprise engaged in commerce, but argues that she herself did engage in commerce and presents facts of her own directly at odds with those asserted

by Redoble. (Opp'n 4–11, ECF No. 30.) Baro also contends that the Court has diversity jurisdiction over her claims based on Commonwealth law because Redoble is a Guam resident, regardless of supplemental jurisdiction. (Opp'n 11–15.) Redoble does not dispute diversity jurisdiction in his reply. (*See* Reply, ECF No. 32.)

Because the undisputed facts show that Baro engaged in commerce, the Court will deny Redoble's motion for summary judgment.

## II.   BACKGROUND

Baro worked for Redoble as a sales clerk at a small fish stand on Saipan from 2011 through April 2014, although the exact dates of her employment are in dispute. (FAC ¶ 6; Second Evelyn Jagdon Decl. ("2d Jagdon Decl.") ¶ 6, ECF No. 32-2.)[1] According to Baro, her work duties included "receiving delivery of fish from fishermen, recording the amount of fish received, selling fish to customers who came to the stall and calling customers who have standing orders that the stall had fish to sell, recording the amount of sales, and delivering fish to customers." (Baro Decl. ¶ 5, ECF No. 30-3.) That position is essentially corroborated by Evelyn Jagdon, who worked with Baro for Redoble and offered two declarations in support of his motion for summary judgment: "[Baro's] duties involved recording sales by hand in a spiral, paper notebook . . . [,] interact[ing] in person with customers when they appeared at the stall to answer questions about the fish we had and take orders . . . [,] [and] mak[ing] sure the fish that we purchased from local Saipan fishermen were placed on ice in order to make sure they did not spoil." (First Evelyn Jagdon Decl. ("1st Jagdon Decl.") ¶ 7, ECF No. 26-2.) Jagdon asserts that she was "primarily responsible for personally purchasing fish from local Saipan fishermen." (1st Jagdon Decl. ¶ 5.)

The parties dispute the origin of the fish sold at the stall. According to Redoble, Marianas

---

[1] Indeed, many of the underlying facts in this case are in dispute. For present purposes, the Court will restrict its focus to facts relating to the applicability of the FLSA.

2

Fishing does not "procure or purchase its fish from outside Saipan." (Redoble Decl. ¶ 4, ECF No. 26-1.) Indeed, Jagdon states that 50% of the fish she purchased for Marianas Fishing came from fishermen who "simply wade[d] into the water to catch fish through a fishing rod." (1st Jagdon Decl. ¶ 6.) On the other hand, a fisherman who alleges that he worked for Redoble, Rufo Yunting, asserts that he "generally went out about thirty-five miles from the CNMI shore" on a boat owned by Redoble's business to catch the fish that Redoble sold. (Yunting Decl. ¶¶ 1-3, ECF No. 30-2.)

Likewise, the parties present differing accounts of whether the fishermen who delivered fish to the stand were independent or directly employed by Redoble. Jagdon claims that Marianas Fishing never employed a crew of fishermen. (2d Jagdon Decl. ¶ 4.) However, Yunting asserts that he was Redoble's employee from late 2011 through 2012 (Yunting Decl. ¶ 1), and Baro states that Redoble owned a boat and employed his own fishermen during her employment (Baro Decl. ¶ 6).

Moreover, the parties dispute the frequency of Baro's fish deliveries to local hotels and restaurants. Jagdon alleges that Baro's "duties did not include delivering fish to customers," with the exception of the first couple of months of her employment. (2d Jagdon Decl. ¶ 7.) Baro disagrees: "A significant part of my job duties was to inform the hotels and restaurants by telephone whenever we had large-size fish in stock and deliver those large-size fish by car to hotels and restaurants." (Baro Decl. ¶ 12.)

Finally, the parties disagree over the terms by which fish would be reserved or sold to hotels and restaurants. According to Jagdon, fish were sold to hotels and restaurants on an ad hoc basis, with hotel or restaurant employees generally coming to the stand and purchasing what they needed on any given day. (2d Jagdon Decl. ¶ 15.) In contrast, Baro alleges that "Redoble had standing orders from restaurants and hotels for large-size fish" and that "[a]ll large-size fish caught by Redoble's fishing crew or provided by other fishing businesses were reserved for hotels and restaurants." (Baro Decl. ¶ 11.)

III.   DISCUSSION

Redoble argues that he is entitled to judgment as a matter of law on the FLSA claims. In particular, he contends that Baro has failed to present any facts demonstrating FLSA coverage under either an enterprise or individual coverage theory: Marianas Fishing is not an "enterprise engaged in commerce" and Baro is not "engaged in commerce" or in the "production of goods for commerce." (Memo. in Support 4.) Baro argues that critical facts relevant to individual coverage remain in dispute. (Opp'n 4–6.) The Court agrees that if Baro were to prove her version of the facts, then the FLSA would cover her as a matter of law. However, proving up the *disputed* facts is not necessary; the *undisputed* facts already establish that the FLSA applies.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law makes clear which facts are "material," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323 (1986).

The FLSA prescribes payment of a minimum wage and overtime for any employee who is "engaged in commerce or in the production of goods for commerce, or is otherwise employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a) (minimum wage), 207(a) (overtime). In other words, the FLSA affords protection to

employees in an individual capacity if they themselves engage in commerce, or through their employer if it itself is a covered entity. *See Zorich v. Long Beach Fire Dept. & Ambulance Serv., Inc.*, 118 F.3d 682, 686 (9th Cir. 1997) ("the FLSA provides two independent types of coverage, and . . . an employee who engages in commerce is individually covered regardless of whether his employer qualifies as a covered enterprise").

Based on the evidence before the Court, enterprise coverage does not apply to this case. Enterprise coverage is limited to businesses which, among other things, have "annual gross volume of sales" of at least $500,000. 29 U.S.C. § 203(s)(1)(A)(ii); *cf. Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943) (noting Congress's "purpose to leave local business to the protection of the states"). Here, Redoble provided undisputed evidence that Marianas Fishing's revenues never came close to that threshold figure. (*See* Redoble Decl. ¶ 2.) Because Marianas Fishing is not an enterprise engaged in commerce, the FLSA only covers Baro if she herself engaged in commerce.

"Commerce" means "trade, commerce, transportation, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). In giving effect to the term, the Supreme Court has emphasized that "whether an employee is engaged 'in commerce' within the meaning of [the FLSA] is determined by practical considerations, not by technical conceptions." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). However, in every instance of FLSA coverage, the employee must in some manner use interstate commerce. *See Dean v. Pacific Bellwether, LLC*, 966 F.Supp.2d 1044, 1047–50 (D.N. Mar. I. 2014) (holding that a cook downloading recipes from the internet was not engaged in commerce because there was no movement of commerce or goods); *Thongsodchareondee v. King Kone Food, Inc.*, No. 10-CV-23763-JLK, 2011 WL 2976933, at *3 (S.D. Fla. July 21, 2011) (denying FLSA individual coverage to a cook who ordered kitchen supplies almost exclusively from intrastate vendors).

The case of *McLeod v. Threlkeld* provides an instructive early example. 319 U.S. 491 (1943). In *McLeod*, the Supreme Court held that a cook who prepared and served meals to railroad maintenance workers was not engaged in commerce. 319 U.S. at 492. The maintenance workers were engaged in commerce, as was the railroad, but the cook could not gain individual coverage through *their* interstate connections: the test is "not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." *Id.* at 497 ("It is the work of the employee which is decisive.").[2] Because merely giving food to workers—whatever the nature of their occupation— did not have an interstate aspect, the FLSA did not apply. *Id.*

Here, however, two facts persuade the Court that Baro was engaged in commerce for purposes of the FLSA. First, the Court finds that all of the fish purchased by Marianas Fishing came from outside the CNMI, and were therefore interstate in character. Despite the vehement disagreement between the parties as to how far from shore the fish were caught, they agree that they were caught in the ocean. This fact is significant because during all but the last four months of Baro's employment, the federal government, and not the Commonwealth, had title to all of the submerged lands around the CNMI. *See Northern Mariana Islands v. United States*, 399 F.3d 1057, 1067 (9th Cir. 2005), *cert denied*, 126 S.Ct. 1566 (2006).[3] As the Supreme Court stated in a similar case, "once the low-water mark is passed the international domain is reached." *United States v. Texas*, 339 U.S. 707, 719 (1950) ("If the property, whatever it may be, lies seaward of

---

[2] *McLeod* was decided before Congress created enterprise liability in a 1961 amendment to the FLSA. *See Zorich*, 118 F.3d at 684.

[3] Congress amended the Territorial Submerged Lands Act to include the CNMI in 2013. *See* Pub. L. No. 113-34 § 1, 127 Stat. 518 (Sept. 18, 2013). The amendment took effect on January 16, 2014. *See* U.S. Dept. of Interior Press Release, January 15, 2014, https://www.doi.gov/news/pressreleases/us-to-convey-title-for-submerged-lands-to-commonwealth-of-the-northern-mariana-islands (last visited April 20, 2016). That Act grants Guam, the Virgin Islands, American Samoa, and the CNMI title to submerged land three geographical miles from their respective coastlines. *See* 48 U.S.C. § 1705.

low-water mark, its use, disposition, management, and control involve national interests and national responsibilities."). Because the fish were caught in federal waters, or "between any State and any place outside thereof," their transportation into the Commonwealth was interstate commerce. *See* 29 U.S.C. § 203(b).[4]

Second, it is undisputed that Baro took possession of the fish from the fishermen and put them on ice pending sale to customers. Whatever else she did or did not do, Baro personally participated in the trade and transportation of interstate items, much like a warehouse worker taking in goods shipped across state lines. *See Jacksonville Paper Co.*, 317 U.S. at 566, 572 (affirming the appellate court's holding that "employees who are engaged in the procurement or receipt of goods from other states are 'engaged in commerce'"); *Figueroa v. America's Custom Brokers, Inc.*, 48 F.Supp.2d 1372, 1375 (S.D. Fla. 1999) (reviewing early cases holding that "loading and unloading of goods is sufficiently related to interstate commerce so as to be considered an integral or component part thereof"); 29 C.F.R. § 776.10.(b) ("Employees whose work is an essential part of the stream of interstate or foreign commerce . . . are likewise engaged in commerce and within the [FLSA's] coverage," including "employees of a warehouse whose activities are connected with the receipt or distribution of goods across State lines").

Moreover, Baro's handling of the fish also qualifies her for FLSA protection on the basis of producing goods for commerce. 29 U.S.C. §§ 206, 207 (individual coverage for the "production of goods for commerce"). After all, an employee "shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, *handling, transporting,* or in any other manner working on such goods." 29 U.S.C. § 203(j) (emphasis added); *see Figueroa*, 48 F.Supp.2d at 1376 ("Since Defendants' employees handle fish

---

[4] Of course, whether the FLSA covers Baro *after* the transfer of ownership of the CNMI's territorial waters from the United States to the Commonwealth will depend on disputed facts—particularly where the fish were caught.

that has moved and/or will move in interstate commerce, they likely are also employees engaged in the production of goods for commerce.").

Redoble argues the Court's findings would thwart the congressional intent to leave local businesses to local regulation because "a fisherman who waded a few feet into the ocean and cast a fishing rod into the water would be engaged in interstate commerce if he then sold any fish he caught to his next door neighbor simply because the fish had been caught in federal waters." (Mot. Summ. J. 7.) The Court does not share Redoble's concern. Congress has already ceded to the Commonwealth its territorial waters effective 2014, which means that, to the extent Congress was worried about the applicability of the FLSA to local fishermen, it has fixed the issue itself. More significantly, interstate commerce is not defined by geographic distance or locality; it is determined by jurisdiction. In a sense, state lines are arbitrary, but that does not make them insignificant, as any taxpayer who lives in one state but works in another can attest. The argument is without merit.

Because the Court finds that the FLSA applies to the undisputed facts of this case, Redoble's argument that the Court should decline to exercise supplemental jurisdiction for wont of a federal subject matter jurisdiction must be denied.

## IV. CONCLUSION

Because the undisputed facts do not warrant judgment as a matter of law in favor of Redoble, his motion for summary judgment (ECF No. 26) is denied.

SO ORDERED this 21st day of April, 2016.

RAMONA V. MANGLONA
Chief Judge